**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| PUERTO RICO BAN (VL) LLC, PUERTO RICO BAN (CI) LLC, PUERTO RICO BAN (CIII) LLC, PUERTO RICO BAN (CE) LLC, PUERTO RICO BAN (IV) LLC, PUERTO RICO BAN (V) LLC, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, <br><br> Defendant. | Case No. _____ 19-482 C _____ <br><br> Judge _____ |

**COMPLAINT**

Plaintiffs Puerto Rico Ban (VL) LLC, Puerto Rico Ban (CI) LLC, Puerto Rico Ban (CIII) LLC, Puerto Rico Ban (CE) LLC, Puerto Rico Ban (IV) LLC, and Puerto Rico Ban (V) LLC (collectively, "Plaintiffs" or "PRIFA BANs Holders"), by and through their attorneys, Morrison & Foerster LLP, bring this action under the Fifth Amendment to the United States Constitution seeking just compensation and declaratory relief for the unconstitutional taking of Plaintiffs' property. In support thereof, Plaintiffs allege as follows:

**INTRODUCTION**

1.     This is an action for just compensation from the United States pursuant to the Takings Clause of the Fifth Amendment to the United States Constitution.

2.     The United States has disregarded liens owned by Plaintiffs and has diverted and dissipated the funds subject to those liens. The United States plans to continue doing so for 40 years. The United States has provided no compensation for this taking of Plaintiffs' property.

3.      Plaintiffs hold certain bond anticipation notes ("BANs") issued by the Puerto Rico Infrastructure Financing Authority ("PRIFA").  The BANs are secured by liens on specified tax revenue of the Commonwealth of Puerto Rico ("Commonwealth").  By virtue of their liens, Plaintiffs have property interests in that revenue, which at the time PRIFA issued the BANs, was required by law to be placed in a dedicated account for payment to Plaintiffs.

4.      The Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), Pub. L. No. 114-187, 130 Stat. 549 (2016), *codified at* 48 U.S.C. § 2101, *et seq.*, established a Financial Management and Oversight Board (the "Oversight Board"), a federal entity, to assist Puerto Rico with achieving fiscal responsibility and obtaining access to capital markets.  The Oversight Board is responsible for approving fiscal plans and budgets for the Commonwealth and filing petitions for the adjustment of debts on behalf of the Commonwealth and its instrumentalities, including PRIFA.  The Oversight Board has filed Title III petitions on behalf of the Commonwealth and several Commonwealth instrumentalities, but it has not filed a Title III petition on behalf of PRIFA.

5.      The United States, acting by and through the Oversight Board, has planned, directed, and implemented legislative action resulting in the taking of Plaintiffs' constitutionally-protected property.  Specifically, the Oversight Board has disregarded PRIFA BANs Holders' property rights in their liens, adopting fiscal plans and budgets that have the force of law and that expressly reallocate the funds subject to those liens to pay for the Commonwealth's general expenses.

6.      PRIFA has defaulted on the payments owed to the PRIFA BANs Holders and has remained in default since July 2016.  As of this filing, approximately $78,100,000 in past due

principal remains outstanding on all PRIFA BANs, together with accrued and unpaid interest (including interest at the default rate since July 2016).

7.     This is a taking of private property for public use without just compensation, in violation of the Takings Clause of the Fifth Amendment to the United States Constitution. Plaintiffs therefore are entitled to just compensation equal to the payment of the principal amount of the PRIFA BANs together with all interest accrued to the date of payment.

## JURISDICTION AND VENUE

8.     The U.S. Court of Federal Claims has jurisdiction and is the proper venue for this takings action pursuant to 28 U.S.C. § 1491(a), because this action asserts claims against the United States under the Fifth Amendment to the United States Constitution.

## PARTIES

9.     Plaintiffs consist of six PRIFA BANs Holders:  Puerto Rico BAN (VL) LLC, Puerto Rico BAN (CI) LLC, Puerto Rico BAN (CIII) LLC, Puerto Rico BAN (CE) LLC, Puerto Rico BAN (IV) LLC, and Puerto Rico BAN (V) LLC.  Each PRIFA BANs Holder is an investment entity incorporated in Delaware.  Collectively, Plaintiffs hold $61,245,000 of the PRIFA BANs.

10.     Defendant is the United States, acting by and through the Oversight Board.  The United States Congress established the Oversight Board under PROMESA to assist the Commonwealth, including instrumentalities such as PRIFA, in managing its public finances and for other purposes.  The Board is a federal entity for constitutional purposes pursuant to the analysis of the United States Supreme Court in *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995) and its voting members are federal officers for constitutional purposes under the First Circuit's recent decision in *Aurelius Inv., LLC v. Puerto Rico*, 915 F.3d 838 (1st Cir. Feb. 2019).

## FACTUAL ALLEGATIONS

**I.    PRIFA Issues the BANS**

11.    The Commonwealth enacted legislation in 2015 authorizing PRIFA to facilitate the refinancing of debts owed by the Highways and Transportation Authority, which at the time was encountering severe fiscal difficulties.  *See* Act No. 29-2015, Statement of Motives (attached as Exhibit A).

12.    On March 17, 2015, PRIFA issued the BANs.   The BANs included various statutory and contractual features designed to ensure investor confidence by securing a stream of tax revenues pledged for repayment to BANs Holders ("Pledged BANs Revenues").

13.    Like the bonds issued by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, the PRIFA BANs are secured by specified funds allocated to the entity that issued the debt instruments.   *See In re Financial Oversight and Management Board for Puerto Rico*, 914 F.3d 694, 703-04 & n.3 (1st Cir. 2019).  More specifically, the BANs are secured in part by a Commonwealth statute imposing an excise tax on certain crude oil and related products.  *See* Act No. 1-2015 § 2.06 (imposing the excise tax) (attached as Exhibit B); Act No. 29-2015 § 2 (pledging revenues to secure payment of BANs).  By law, the pledge of these revenues from the excise tax dedicated for payment of the BANs "constitute[s] a lien valid and enforceable by bondholders."  Act No. 29-2015 § 2.

14.    The liens on the Pledged BANs Revenues are "valid and enforceable" "without the need to execute any additional document whatsoever."  *Id.*   In other words, the Pledged BANs Revenues are "subject to said lien automatically."  *Id.*

15.    These liens are the "property" of the PRIFA BANs Holders under the Takings Clause of the Fifth Amendment.  *See, e.g.*, *Koontz v. St. Johns River Water Mgmt. Dist.*, 133

S.Ct. 2586, 2601 (2013) ("[W]e have repeatedly held that the government takes property when it seizes liens.").

16.    The statutes and agreements governing the BANs prescribe specific mechanisms for ensuring delivery of the Pledged BANs Revenues for repayment to the PRIFA BANs Holders.  The Pledged BANs Revenues collected through the excise tax are required by law to be deposited into a dedicated Infrastructure Financing Authority Special Economic Assistance Fund.  Act. No. 1-2015 § 2.08.  This fund must be used (as relevant) to make payments on the PRIFA BANs.  *Id.*

17.    The only proper purpose for which Pledged BANs Revenues may be diverted from satisfying the PRIFA BANs Holders' liens is to repay general obligation bonds issued by the Commonwealth if the Commonwealth's available resources are not otherwise sufficient to pay holders of those bonds in any given fiscal year.  *See* Offering Memorandum at 13 (attached as Exhibit C); P.R. Const., art. VI, § 8; Act. No. 29-2015 § 2.

18.    The agreements governing the BANs carry out this prescribed mechanism by requiring the Commonwealth's Department of Treasury to transfer the Pledged BANs Revenues to a fund (referred to here as the "Dedicated BANs Fund") held by a trustee.  *See* Irrevocable Instructions Letter (attached as Exhibit D); *see also* Offering Memorandum at 11.

19.    The allocation of the Pledged BANs Revenues to PRIFA cannot be revoked or rescinded until the BANs "have been paid in full."  Act No. 1-2015 § 2.02.

20.    PRIFA is required to pay interest on the BANs on the first business day of each month until the BANs mature or are redeemed.  Offering Memorandum at 4.

II.    **Congress Enacts PROMESA and Creates the Oversight Board**

21.    On June 29, 2015, the Commonwealth's Governor delivered a television address in which he declared that Puerto Rico is not capable of paying under the current terms of its debt.

22.    Beginning in December 2016, Congress debated a number of bills to address Puerto Rico's fiscal difficulties.

23.    On June 30, 2016, President Obama signed PROMESA into law.  Pub. L. No. 114-187.  The stated purpose of PROMESA is to "establish an Oversight Board to assist the Government of Puerto Rico, including instrumentalities, in managing its public finances, and for other purposes."  H.R. 5278, 114th Cong. (2016) (preamble) (attached as Exhibit E).

24.    Starting on July 1, 2016, PRIFA began defaulting on its payments on the BANs.

1.    **The Oversight Board**

25.    The Oversight Board is a federal entity.  Congress created the Oversight Board in furtherance of governmental objectives pursuant to its power under Article IV, Section 3 of the United States Constitution "to dispose of and make all needful rules and regulations for territories."  48 U.S.C. §§ 2121(b)(1)-(2).  Congress's purpose in creating the Oversight Board— "to provide a method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets"—fell squarely within this constitutional mandate.  *Id.* § 2121(a).

26.    The Oversight Board is charged with, among other things, approving budgets and fiscal plans for the Commonwealth.  If the Commonwealth's proposed budgets and/or fiscal plans are not compliant with PROMESA, the Oversight Board is also charged with developing and has developed its own.  Furthermore, PROMESA authorizes the Oversight Board to file petitions for the adjustment of debts on behalf of the Commonwealth and its instrumentalities. These "Title III" petitions incorporate various features of the Bankruptcy Code.  *See* 48 U.S.C. § 2161.

27.     PROMESA gives the Oversight Board "sole discretion" to exercise certain powers.  The Oversight Board has the sole authority to file a restructuring petition, *id.* § 2164(a), submit a plan of adjustment, *id.* § 2172, and modify the plan of adjustment, *id.* § 2173.  It also has "sole discretion" to designate "any territorial instrumentality as a covered territorial instrumentality that is subject to the requirements of [PROMESA]," § 2121(d)(1)(A), to require the Commonwealth Governor to submit "such budgets and monthly or quarterly reports regarding a covered territorial," § 2121(d)(1)(B), to require separate budgets and reports for covered territorial instrumentalities apart from the Commonwealth's budget, § 2121(d)(1)(C), and to "exclude any territorial instrumentality from the requirements of [PROMESA]," § 2121(d)(2)(A).

28.     The Board also has the power to "prevent[] the enforcement or application of" Commonwealth laws and regulations that it deems inconsistent with the provisions of PROMESA or the fiscal plans developed pursuant to it.  48 U.S.C. § 2144(a)(5), (b)(5).

29.     The Oversight Board also serves as the representative of the debtor in a PROMESA Title III case.  *Id.* § 2175.  In that capacity, it is empowered to "take any action necessary on behalf of the debtor to prosecute the case of the debtor."  48 U.S.C. § 2175(a).

30.     Any plan of adjustment for the Commonwealth under PROMESA Title III must be "consistent with the applicable Fiscal Plan certified by the Oversight Board." *Id.* § 2174(b)(7).

31.     The Oversight Board has filed Title III petitions on behalf of the Commonwealth and several Commonwealth instrumentalities, but it has not filed a Title III petition on behalf of PRIFA.

32.     The Oversight Board consists of seven members, each of whom was appointed by the President on August 31, 2016.  *Id.* § 2121(e)(1)(A).  The President selected the members of

the Oversight Board from lists provided by other federal government officials, including the Speaker of the House of Representatives, the Majority Leader of the Senate, the Minority Leader of the House of Representatives, and the Minority Leader of the Senate.  *Id.* § 2121(e)(2)(A).  Although the Governor of Puerto Rico (or his designee) is an ex officio member of the Oversight Board, he or she has no voting rights; only the federally-appointed members of the Oversight Board may vote on its policies and its other actions.  *Id.* § 2121(e)(3).

33.    The President also has the sole authority to remove voting members from the Oversight Board, reappoint members to successive terms, and fill vacancies.  The voting members of the Oversight Board serve three-year terms, *id.* § 2121(e)(5)(A), and the President may remove a voting member of the Oversight Board for cause during that term, *id.* §2121(e)(5)(B).  The President also may reappoint a voting member to consecutive terms and fill vacancies on the Oversight Board, provided that the appointment is made on the same basis by which the original member was appointed.  *Id.* §§ 2121(e)(5)(D), (e)(6).

34.    The voting members of the Oversight Board are bound by federal ethics rules, as opposed to Puerto Rico law.  *Id.* §§ 2121(g), 2129.

35.    Section 103(c) of PROMESA waives the application of Puerto Rico procurement laws to the Board.  48 U.S.C. § 2123(c).

36.    The Oversight Board uses federal property and services in the course of executing its mission.  PROMESA expressly authorizes the Board to use federal government facilities or equipment.  *Id.* § 2122.  The Federal Administrator of General Services is obligated to provide administrative support services to the Oversight Board.  *Id.* § 2124(n).  Federal employees may be hired by or detailed to the Oversight Board in accordance with the Intergovernmental Personnel Act of 1970.  *Id.* § 2123.  In each case, the property, services, or employees used by

8

the Board from other federal government departments or agencies may be provided on either a reimbursable or non-reimbursable basis.  *Id.* §§ 2122-24.

37.    The Oversight Board also has the power to secure information directly from federal departments or agencies, notwithstanding any laws to the contrary.  48 U.S.C. § 2124. Already, the Oversight Board has "received multiple technical assistance briefings from the United States Department of Treasury" pursuant to this provision of PROMESA.[1]

38.    The Oversight Board must provide a budget each fiscal year to, among others, the President, the House Committee on Natural Resources, and the Senate Committee on Energy and Natural Resources, and must issue certifications in connection therewith.  48 U.S.C. §§ 2127(a), 2143(c).  The board must also make annual reports to the President and Congress.  *Id.* at §2148. Board members have regularly communicated with Congress, the United States Treasury Department, and other federal government agencies, and have testified before Congress on the Board's progress in discharging its federal mandate.[2]

39.    Statements made in Congress during PROMESA's passage repeatedly referred to the Oversight Board as the "federal oversight board."[3]  In fact, the House Report accompanying

---

[1]    *See* Declaration of Jose Carrión III in Support of Fin. Oversight and Mgmt. Bd.'s Motion for an Extension of Time to File a Response to Pl.'s Motions For Relief From the Automatic Stay and for Leave to Intervene, *Brigade Leveraged Capital Structure Fund Ltd., et al v. Alejandro Garcia-Padilla, et al.*, Case No. 3:16-cv-01610-FAB at ¶ 6, ECF 126-1 (D. P.R. Oct. 7, 2016).

[2]    *See* The Financial Oversight and Management Board for Puerto Rico, https:// juntasupervision.pr.gov/index.php/en/documents/.

[3]    *See, e.g.*, 162 Cong. Rec. S4699, S4700 (daily ed. June 29, 2006) (statement of Sen. Cornyn); 162 H3600, H3605 (daily ed. June 9, 2016) (statement of Rep. Maloney); *Discussion Draft, H.R., "Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA)": Hearing Before the H. Comm. on Natural Resources*, 114th Cong. 56-59 (2016) (statement of Rep. Pierluisi); 162 Cong. Rec. S1848, S1849 (daily ed. Apr. 11, 2016) (statement of Sen. Inhofe); *The Need for the Establishment of a Puerto Rico Financial Stability and Economic Growth Authority Oversight Hearing Before the H. Comm. on Natural Resources*, 114th Cong. 43 (2016) (statement of Rep. Pierluisi).

PROMESA explained that the Congressional Budget Office should treat the Oversight Board as a federal entity because of the "significant degree of federal control involved in [the Oversight Board's] establishment and operations."  H. Rpt. No. 114-602, Part 1 (Conf. Report of the Committee on Natural Resources) (attached as Exhibit F).

40.    Because the Oversight Board is a part of the federal government, its actions are the actions of the United States.  Thus, when the Oversight Board confiscates private property— such as the PRIFA BANs Holders' property at issue here—it is a compensable taking by the United States.

41.    Although PROMESA provided the Oversight Board would "be created as an entity within the territorial government" of Puerto Rico and "shall not be considered to be a department, agency, establishment, or instrumentality of the Federal Government," 48 U.S.C. § 2121(c), the Supreme Court's decision in *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995), holds that such statutory disclaimers do not speak to whether an entity is the federal government for constitutional purposes.

42.    The recent decision by the U.S. Court of Appeals for the First Circuit in the related case of *Aurelius Inv., LLC v. Puerto Rico*, 915 F.3d 838 (1st Cir. 2019), confirms this conclusion.  There, the Court found that the voting members of the Oversight Board were "officers of the United States" who had to be appointed in accordance with requirements of the Appointments Clause.

43.    In addition, Section 108 of PROMESA, which is labeled "Autonomy of Oversight Board," 48 U.S.C. § 2128, precludes the Puerto Rico Governor and Legislature from exercising any power or authority over the Oversight Board.  It pronounces that "Neither the Governor nor the Legislature may . . . exercise any control, supervision, oversight, or review over the . . .

Board or its activities; or . . . enact, implement, or enforce any statute, resolution, policy, or rule that would impair or defeat the purposes of this chapter, as determined by the . . . Board." *Id.* § 2128(a).

44.     Thus, consistent with the Supreme Court's holding in *Lebron* and the First Circuit's decision in *Aurelius*, the Oversight Board is a part of the federal government for constitutional purposes.

### 3.     Fiscal Plans

45.     PROMESA requires the Commonwealth to submit an annual "fiscal plan" for approval by the Oversight Board.  48 U.S.C. § 2141(a).

46.     The purpose of the fiscal plan is to "provide a method to achieve fiscal responsibility and access to the capital markets." *Id.* § 2141(b).  Among other things, each fiscal plan must provide estimates of revenues and expenditures that are based either on the laws currently in effect or on "specific bills that require enactment in order to reasonably achieve the projections of the Fiscal Plan." *Id.* § 2141(b)(1)(A).    PROMESA circumscribes the Commonwealth's discretion in drafting its fiscal plans by requiring the Commonwealth to "adopt appropriate recommendations submitted by the Oversight Board" and to "include such additional information as the Oversight Board deems necessary." *Id.* § 2141(b)(1)(K)-(L).

47.     Under PROMESA, the Governor cannot submit a budget to the Commonwealth legislature until the Oversight Board has certified a fiscal plan. *Id.* § 2141(c).  The Oversight Board, moreover, has the "sole discretion" to determine if the Governor's proposed fiscal plan meets PROMESA's requirements. *Id.* § 2141(c)(3).  If the Oversight Board determines a fiscal plan is deficient, PROMESA requires it to inform the Governor and include specific recommendations for revisions to the fiscal plan to correct the deficiencies. *Id.*  If the Governor fails to submit a fiscal plan that meets PROMESA's requirements, the Oversight Board can step

in, develop its own plan, and submit it to the Governor. *Id.* § 2141(d)(2). PROMESA deems fiscal plans developed by the Oversight Board to be approved without the need for action by the Governor or the Puerto Rico Legislature. *Id.* § 2141(e)(2).

48.     The Oversight Board also has the sole discretion to determine whether "instrumentalities" of the Commonwealth, like PRIFA, must submit their own fiscal plans or will be included in the Commonwealth's. *Id.* § 2121(d)(1).

49.     Future Commonwealth legislation must comply with the certified fiscal plans of the Commonwealth and its instrumentalities, including PRIFA. *Id.* § 2144.

**3.     Budgets**

50.     PROMESA also requires the Commonwealth to submit budgets for each fiscal year for approval by the Oversight Board. 48 U.S.C. § 2142(a).

51.     The budgets must comply with the certified fiscal plan. 48 U.S.C. § 2142(c)(1)-(2), (d)(1)-(2).

52.     The Governor must first submit a budget that complies with the applicable fiscal plan to the Oversight Board for approval. 48 U.S.C. § 2142(c)(1). The Oversight Board determines "in its sole discretion" whether the budget complies with the fiscal plan. *Id.* If the Oversight Board determines that the Governor's budget is deficient, it must notify the Governor and describe necessary corrective actions. *Id.* § 2142(c)(1)(B). If the Governor fails to rectify the budget, the Oversight Board develops its own budget and submits the budget to the Governor and, if it is a Commonwealth (rather than instrumentality) budget, the Legislature. 48 U.S.C. § 2142(c)(2).

53.     If the Oversight Board determines that the Governor's budget is compliant, and if it is a Commonwealth (rather than instrumentality) budget, the Oversight Board submits the

budget to the Legislature.  42 U.S.C. § 2142(c)(1)(A)(ii).  If the Legislature adopts a budget, the Oversight Board determines whether it is a compliant budget.  42 U.S.C. § 2142(d)(1).  If the Oversight Board determines that the Legislature's budget is not compliant, the Oversight Board must notify the Legislature and describe necessary corrective actions.  48 U.S.C. § 2142(d)(1)(B).  If the Legislature fails to rectify the budget, the Oversight Board develops its own budget and submits it to the Governor and the Legislature.  48 U.S.C. § 2142(d)(2).

54.    If the Governor or Legislature fails to develop budgets that the Oversight Board has determined to be compliant in the time specified by the Oversight Board, the Oversight Board's own budgets are deemed to be approved by the Governor and the Legislature and are "in full force and effect beginning on the first day of the applicable fiscal year."  48 U.S.C. § 2142(e)(3)(A), (e)(3)(C), (e)(4)(A), (e)(4)(C).

## III.    The Oversight Board Directs the Commonwealth to Disregard PRIFA BANs Holders' Liens and Divert Their Collateral

55.    Between January 24, 2018, and April 5, 2018, the Commonwealth Governor submitted four versions of a proposed Commonwealth fiscal plan for fiscal year 2019 to the Oversight Board for its approval.  The Oversight Board rejected each proposed fiscal plan.  The communications between the Oversight Board and the Commonwealth during this time, coupled with the Oversight Board's actions, demonstrate that the Oversight Board has induced and directed the Commonwealth to dishonor the PRIFA BANs Holders' liens and to divert their collateral to pay for the Commonwealth's general expenses.  Indeed, through the Oversight Board's own fiscal plan and budget, the Oversight Board has prohibited the Commonwealth from using the PRIFA BANs Holders' collateral for its intended purpose of repaying the PRIFA BANs.

56.    On March 28, 2018, the Oversight Board sent a letter (the "March 28 Letter") to the Governor regarding the Commonwealth's March 23, 2018 fiscal plan proposed by the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") on behalf of the Commonwealth.  *See* March 28 Letter (attached as Exhibit G).  In the letter, the Oversight Board included a number of items that needed to be addressed in a revised fiscal plan.  The Oversight Board requested that the Commonwealth modify the statute imposing an excise tax on certain crude oil and related products ("Crudita").  Crudita revenues are Pledged BANs Revenues. During that time, Crudita was capped at $470 million per year, and rates were adjusted to hit that target regardless of demand.  The Oversight Board required that the revised fiscal plan include a waiver of the $470 million cap and that the excise tax rate remain constant, starting in fiscal year 2020.  The Oversight Board also required that Crudita be calculated based on volume sold, so that revenues will increase with the economy.  By making such requests, the Oversight Board was pressuring the Commonwealth to increase Crudita collections for the benefit of the general fund, and not the Plaintiffs.

57.    In the March 28 Letter, the Oversight Board also required that the revised plan provide that all revenues flow through the general fund, rather than to special revenue funds by fiscal year 2020.  Once in the general fund, the "funds are then allocated for expenditure as deemed by the priorities of the Government."  March 28 Letter at 5.  Through its March 28 Letter, the Oversight Board demanded that the Commonwealth divert Pledged BANs Revenues into the general fund.

58.    On April 19, 2018, after determining that the fiscal plan proposed by the Governor and Legislature failed to comply with PROMESA, the Oversight Board certified its own fiscal plan for the Commonwealth ("April 2018 Board Fiscal Plan") pursuant to PROMESA

§ 202(d)(2) and (e)(2).  *See* 2018 April Board Fiscal Plan (attached as Exhibit H).  The April 2018 Board Fiscal Plan included certain policy initiatives that had previously been rejected by the Governor, including with respect to the $470 million Crudita cap.  Indeed, the April 2018 Board Fiscal Plan included a measure to maintain a constant Crudita excise tax rate, consistent with the requirement imposed by the Oversight Board in the March 28 Letter.  Further, the April 2018 Board Fiscal Plan provided that all special revenue funds be directed to the Commonwealth's treasury single account, an account utilized for collection of general Commonwealth revenue and payment of general Commonwealth expenses.

59.    On May 4, 2018, AAFAF submitted a proposed Commonwealth budget for fiscal year 2019 on behalf of the Commonwealth.

60.    On May 10, 2018, the Oversight Board issued a notice of violation under PROMESA § 202(c)(1)(B)(i) to the Governor, stating that the Governor's proposed budget was not compliant with the April 2018 Board Fiscal Plan and instructing the Governor to submit a revised budget.

61.    On May 18, 2018, AAFAF submitted a revised proposed Commonwealth budget for fiscal year 2019 on behalf of the Commonwealth.

62.    On May 30, 2018, the Oversight Board certified a revised version of the fiscal plan pursuant to PROMESA § 201(e)(2).

63.    On June 1 2018, the Commonwealth submitted draft budget resolutions (the "June 1 Resolutions") to the Oversight Board.

64.    On June 6, 2018, the Oversight Board posted a revised compliant budget (the "June 6 Board Budget") after determining that the Commonwealth's June 1 Resolutions were not compliant.  *See* June 6 Board Budget (attached as Exhibit I).  Attached to the June 6 Board

Budget was a resolution (the "Crudita Resolution") that provided for the "claw back" of $279,850,000 in Crudita revenue to cover governmental expenses other than repayment of the PRIFA BANs. This resolution proposed by the Oversight Board sought to improperly divert Pledged BANs Revenues.

65.    On June 21, 2018, Antonio Soto, House Treasury, Budget and PROMESA Committee Chairman, announced that the legislature would approve a 2019 General Fund Budget that was larger than the June 6 Budget proposed by the Oversight Board. As directed by the Oversight Board's March 28 Letter and the April 2018 Board Fiscal Plan, the proposed budget included a revised Crudita Resolution that provided that $313,045,000 of Crudita revenue—Pledged BANs Revenues—would be used to fund certain general expenses of the Commonwealth. Holding Pledged BANs Revenue hostage, the revised Crudita Resolution included a provision that would reduce usage of clawed back funds if the Oversight Board included upward revisions in its revenue forecast. In other words, the $313,045,000 amount of diverted Crudita revenue would be reduced at the same rate the Oversight Board's revenue estimates increased.

66.    On June 29, 2018, the Oversight Board sent a letter to the Governor and stated its intention to certify a revised fiscal plan due to the legislature's non-compliance with previous versions of the new fiscal plan.

67.    On the same day, the legislature was scheduled to vote on a revised general fund budget that reduced certain spending resolutions ("June 29 Legislature Budget"). The June 29 Legislature Budget included a resolution that the amount of Crudita revenue to be diverted for general expenses would be reduced to $239,850,000 ("June 29 Crudita Resolution"). On June

29, the Puerto Rico House of Representatives and the Senate of Puerto Rico voted to approve the June 29 Legislature Budget, but did not vote on the attached June 29 Crudita Resolution.

68.    On June 29, 2018, the Oversight Board certified a revised Commonwealth fiscal plan ("June 2018 Board Fiscal Plan") in response to the legislature's failure to pass labor reform legislation required by the Oversight Board.  The June 2018 Board Fiscal Plan was substantially similar to the April 2018 Board Fiscal plan.

69.    On June 30, 2018, the Oversight Board certified a separate Commonwealth budget for fiscal year 2019 (June 30, 2018 Board Budget).  *See* June 30, 2018 Board Budget (attached as Exhibit J).  The June 30, 2018 Board Budget incorporated a further revised Crudita Resolution that called for $299,444,000 of Crudita revenue to be diverted to cover certain general expenses, and omitted the provision that Crudita revenue would be reduced by any upward revision in revenue forecast.  *See* Revised Crudita Resolution (attached as Exhibit K). The June 2018 Board Fiscal Plan, the June 30, 2018 Board Budget, and (upon information and belief) the Oversight Board's Crudita resolution, were deemed approved and certified in accordance with PROMESA, without the need for any further action by the Governor or the Puerto Rico Legislature.  Through the Oversight Board, the United States has thus planned, directed, and mandated a taking of Plaintiffs' property by diverting Pledged BANs Revenues to pay for the Commonwealth's general expenses in the Crudita Resolution.  The Commonwealth cannot use the Pledged BANs Revenues for their intended purpose of paying the PRIFA BANs without disregarding the mandates of the June 30, 2018 Board Budget and the requirements of PROMESA.

70.    On October 23, 2018 the Oversight Board certified a "New Fiscal Plan" (attached as Exhibit L).  The June 30, 2018 Board Budget remained in place despite the New Fiscal Plan.

71.    As set forth above, the Oversight Board has caused and continues to cause the Pledged BANs Revenues to be diverted, in derogation of PRIFA BANs Holders' property interests, such that they are no longer being deposited into the Dedicated BANs Fund.  Instead, the Oversight Board has caused and continues to cause the Pledged BANs Revenues to be deposited into a general Treasury account.

72.    The only proper purpose for which Pledged BANs Revenues may be diverted from satisfying the PRIFA BANs Holders' liens is to repay general obligation bonds issued by the Commonwealth if the Commonwealth's available resources are not otherwise sufficient to pay for those bonds in any given fiscal year.  *See* Offering Memorandum at 13; P.R. Const., art. VI, § 8; Act. No. 29-2015 § 2.  But the Commonwealth, at the Oversight Board's direction and requirement, is using the Pledged BANs Revenues for other purposes.   Indeed, the Commonwealth has been in default and has failed to make payments on its general obligation bonds since July 1, 2016.[4]

73.    The Oversight Board's past and ongoing diversion of the Pledged BANs Revenues effectively nullifies Plaintiffs' property rights.  Plaintiffs have been and continue to be deprived of their monthly interest payments, and their liens in the Pledged BANs Revenues have been disregarded and effectively nullified by the diversion of those Revenues to the General Treasury.

74.    The New Fiscal Plan makes no allocation for repayment of the PRIFA BANs over the course of the Plan's entire 40-year life.  Therefore, under the terms of the New Fiscal Plan, the diversion of the Pledged BANs Revenues will continue for 40 fiscal years.  The New Fiscal

---

[4] *See* Commonwealth of Puerto Rico:  Financial Information and Operating Data Report, dated December 18, 2016, available at:
http://bgfpr.com/documents/CommonwealthofPuertoRicoFinancialInfoFY201612-18-16.pdf.

Plan represents the Oversight Board's definitive position that the Pledged BANs Revenues will not be disbursed to the PRIFA BANs Holders, including the Plaintiffs.

75.     Any Title III plan of adjustment the Oversight Board may file cannot and will not alter that definitive position.  Any plan of adjustment for the Commonwealth under PROMESA Title III must be "consistent with the applicable Fiscal Plan certified by the Oversight Board." 48 U.S.C. § 2174(b)(7).  Because the New Fiscal Plan does not provide for disbursements to the PRIFA BANs Holders, a plan of adjustment cannot and will not do so either.

**COUNT 1**

**The Oversight Board Has Taken Plaintiffs' Property Without Just Compensation In Violation of the Takings Clause of the U.S. Constitution.**

76.     Plaintiffs incorporate by reference all of the foregoing paragraphs as though set forth fully herein.

77.     The Fifth Amendment to the United States Constitution provides that "private property" shall not "be taken for public use, without just compensation."

78.     Plaintiffs possess liens on the Pledged BANs Revenues, which constitute vested private property rights.

79.     At all relevant times, the Oversight Board was an instrumentality of the United States government.

80.     Using its powers under PROMESA, the Oversight Board planned, prepared and imposed upon the Commonwealth a budget and fiscal plan that resulted in the taking of Plaintiffs' property.

81.     By prohibiting the Commonwealth from honoring Plaintiffs' liens and directing the Commonwealth to divert the Pledged BANs Revenues from the Dedicated BANs Fund, the Oversight Board has effected a taking of Plaintiffs' property.

82.    Plaintiffs have not received just compensation for the taking of their property.

83.    Insofar as any provision of PROMESA prohibits this Court from affording appropriate relief under the Takings Clause, such provision also violates the Takings Clause.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request:

A.    An award of just compensation equal to the payment of the principal amount of the Plaintiffs' PRIFA BANs together with all interest accrued to the date of payment under the Fifth Amendment for the United States' taking of their property;

B.    Declaratory judgment that the Oversight Board's diversion of the Pledged BANs Revenues without just compensation violates the Takings Clause of the Fifth Amendment to the United States Constitution;

C.    Any other relief to which Plaintiffs may justly be entitled.

Dated: April 1, 2019

*Of Counsel:*
MORRISON & FOERSTER LLP
Kevin P. Mullen
Charles L. Capito, III
Sandeep N. Nandivada
2000 Pennsylvania Ave., NW
Washington, DC 20006-1888
Telephone: 202.887.1560
KMullen@mofo.com
CCapito@mofo.com
SNandivada@mofo.com

Lena H. Hughes
250 West 55th Street
New York, NY 10019-9601
Telephone: 212.336.4152
LHughes@mofo.com

Respectfully submitted,

By:   /s/ Joseph R. Palmore
        Joseph R. Palmore
        *Counsel of Record*
        MORRISON & FOERSTER LLP
        2000 Pennsylvania Ave., NW
        Washington, DC 20006-1888
        Telephone: 202.887.6940
        Facsimile: 202.887.0763
        JPalmore@mofo.com

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Federal Claims by using the CM/ECF system on April 1, 2019.

I certify that a copy of the foregoing was served this day on all parties via the Court's CM/ECF system.


Dated:  April 1, 2019                                                /s/ Joseph R. Palmore
                                                                              Joseph R. Palmore